UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-12-0052 EMC |
| Plaintiff, | |
| v. | **SUPPLEMENTAL PRETRIAL CONFERENCE ORDER** |
| ANTHONY McGEE, | |
| Defendant. _____/ | |

This order supplements the Court's final pretrial conference order of February 6, 2013. *See* Docket No. 86 (order). The Court's additional rulings are discussed below.

## I. PLAINTIFF'S MOTIONS IN LIMINE

In his fourth motion in limine, Mr. McGee asked the Court to bar evidence of his parole status. The government largely had no objection but was concerned that the jury might speculate about whether law enforcement's search of the hotel room was lawful when, in fact, it was predicated on his being a parolee. The government suggested that the jury be instructed that the search of the hotel room was legal or at least that its legality was not an issue for the jury. The Court asked the parties to meet and confer to determine whether they could reach agreement on an instruction to be given to the jury.

The government has proposed the following instruction:

> I have previously held that law enforcement officers lawfully detained the defendant and lawfully performed their searches at the Auburn Hotel on November 18, 2011. As I will further instruct you later, you are only to find the facts from all the evidence in the case, and you

1

> have a duty to follow the law as I give it to you, whether you agree
> with it or not.

Docket No. 94 (Pl.'s St. at 2) (noting that the second sentence is adapted from Ninth Circuit Model Criminal Jury Instruction No. 3.1). Mr. McGee filed an untimely brief in response. In the brief, he objects to the government's proposed instruction because he will not make an argument that the parole search was in violation of the Fourth Amendment such that the instruction will only serve to confuse the jury. Mr. McGee also argues that the government's proposed instruction is problematic because use of "the word 'lawful' would place a gloss of court approval over all acts of the San Francisco Police Department on November 18, 2011." Docket No. 96 (Def.'s Supp. Br. at 2). Finally, Mr. McGee contends that the government's proposed instruction "does not accurately reflect the scope of the motion to suppress" because it is his "recollection and understanding that the legality of the parole search of Room 301 was not addressed directly during the motion to suppress." Docket No. 96 (Def.'s Supp. Br. at 3).

The Court does not find Mr. McGee's first argument persuasive. Even if he will not argue to the jury that the search was unlawful, the government has a legitimate concern that the jury might speculate as to the lawfulness of the search. Mr. McGee's second argument, however, has merit. Accordingly, the Court shall not give the government's proposed instruction but instead shall give the following instruction when appropriate:

> You are not to speculate as to whether the law enforcement officers
> lawfully detained Mr. McGee or lawfully searched him or the hotel
> room. Those are issues for the Court to decide and not the jury. As I
> will further instruct you later, it is your duty to apply the law as I give
> it to you to the facts as you find them, whether you agree with the law
> or not.

## II. **DEFENDANT'S MOTIONS IN LIMINE**

On February 1, 2013, Mr. McGee filed a new motion in limine, asking the Court to find that certain matters contained within a law enforcement officer's personnel file is admissible. *See* Docket No. 84 (motion).

The Court **DENIES** the motion. As the government notes, the document at issue reflects that allegations of conduct unbecoming an officer were made against an officer, but there is no indication

that any actual finding was made regarding those allegations. The government has also represented to the Court that, based on its communications with counsel at the San Francisco Police Department, it is its understanding that there has been a preliminary finding of proper conduct, which is now being reviewed by the chief of police. Mr. McGee has made no offer of proof to the contrary. The Court finds the information largely collateral and given the minimal probative value, this evidence is not admissible and may not be inquired into under Federal Rules of Evidence 403 and 608(b).[1]

### III. JURY VOIR DIRE

Mr. McGee initially asked the Court to ask potential jurors the following question: "Have you had any experiences with anyone of African American ethnicity that may make it difficult for you to be impartial and fair to Mr. McGee?" At the final pretrial conference, the Court stated that it would ask a question to that effect but instructed the parties to meet and confer to determine whether they could reach agreement using different wording.

The government has now proposed the following wording: "Have you had any experiences with anyone of any race or ethnicity that would make it difficult for you to be impartial or fair to members of that race or ethnicity?" Mr. McGee filed an untimely brief in response. In the brief, Mr. McGee contends that the question posed should be as follows: "Have you had any experiences with anyone of African American ethnicity that would make it difficult for you to be impartial or fair to someone of that race or ethnicity?" Mr. McGee argues that his question, and not the government's, should be given because his "race is inescapable" -- not only because he has identified himself as African American but also because other persons have identified him as such, including the law enforcement officers and confidential informants. Docket No. 96 (Order at 3). Mr. McGee asserts: "There is no doubt that [he] is African American, and only a question regarding bias toward African Americans can adequately assist him in determining which prospective jurors may not be able to follow the court's instructions impartially." Docket No. 96 (Order at 3). Mr. McGee adds that, "[i]f the government has concerns about racial biases towards other witnesses,

---

[1] Extrinsic evidence such as the personnel file itself is not admissible under the express terms of Rule 608(b).

3

[he] would not object to similar voir dire based on the races or ethnicities of those witnesses."
Docket No. 96 (Order at 3).

Taking into account both parties' concerns, the Court finds that the following question for the jury is most appropriate: "If selected as a juror you will be asked to evaluate the evidence in the case without being influenced in any way by the race or ethnic origin of the defendant, the attorneys, the witnesses, and the government agents (including the fact that the defendant is African American). Do you have any reservations whatsoever about your ability to do that?"

### IV. JURY INSTRUCTIONS

A.   Jury Instruction No. 8.65

Mr. McGee objects to the instruction on two grounds: (1) because it uses the term "felon" in the title and (2) because it states that, "in 2004," he was convicted of a crime punishable by imprisonment for a term exceeding one year.

The first objection is overruled. The Court has already ruled on Mr. McGee's first motion in limine in which he asked the Court to preclude any reference to "felon" or "felony." The Court reiterates that Ninth Circuit Model Criminal Jury Instruction No. 8.65 uses the term "felon" in the title.

The second objection is sustained. Mr. McGee objects to the reference to 2004 as the date of his conviction is not material. The Court notes that this was an instruction that Mr. McGee previously stipulated to. Nevertheless, the Court shall not bar Mr. McGee from now raising an objection. The Court agrees that the date of the prior conviction is not material and therefore shall simply instruct the jury that Mr. McGee "stipulates that he was previously convicted of a crime punishable by imprisonment for a term exceeding one year."

B.   Jury Instruction No. 6.10

The government continues to object to Jury Instruction No. 6.10 -- *i.e.*, the "mere presence" instruction. The government contends that the instruction is not necessary because "the evidence connecting the defendant to the additional drugs in the [hotel] room is based on much more than the defendant's presence at the hotel." Docket No. 94 (Pl.'s St. at 3). In support of this statement, the government points to the DNA found on the packaging of the additional drugs in the room, which is

consistent with Mr. McGee's DNA.  The government also notes that "the baggies recovered from [Mr. McGee's] person were consistent with the packaging material recovered from the room." Docket No. 94 (Pl.'s St. at 3).  Finally, the government argues that the instruction should not be given if only because it is confusing and misleading since no witness ever actually saw Mr. McGee inside the hotel room and the defense applies only to one out of the three counts.

The Court overrules the objection.  It is true that, "[i]f the government's case is based on more than just a defendant's presence, and the jury is properly instructed on all elements of the crime, then a 'mere presence' instruction is unnecessary." *United States v. Negrete-Gonzales*, 966 F.2d 1277, 1282 (9th Cir. 1992); *see also United States v. Tucker*, 641 F.3d 1110, 1122 (9th Cir. 2011) (stating that "[a] district court may properly refuse to give a mere presence instruction when the government's case rests on more than just a defendant's presence, and the jury is properly instructed on all elements of the crime") (internal quotation marks omitted).  But arguably the evidence to which the government points amounts to little more than mere presence, proximity, or association.  *Compare, e.g.*, *id.* at 1122-23 (noting, *e.g.*, that the government presented evidence that the defendant was the only adult occupant of the apartment and that the gun was in the same bedroom that the defendant was using, near his personal effects).  And even if the evidence was more than mere presence, proximity, or association, that would simply mean that the instruction would be "unnecessary." *Negrete-Gonzales*, 966 F.2d at 1282.  The government has not established that it would be prejudiced by the giving of the instruction, particularly as it would be free to argue that the evidence establishes more than mere presence, proximity, or association.

On balance, the Court concludes that, because "[a] defendant is entitled to have the judge instruct the jury on his theory of defense, provided that it is supported by law and has some foundation in the evidence" (although "[a] court may reject a defendant's theory of the case instruction if the other instructions given in their entirety cover the defense theory"), *Tucker*, 641

///

///

///

///

F.3d at 1122 (internal quotation marks omitted),[2] and because the instruction would not appear to cause any prejudice to the government, the instruction should be given.

To the extent the government contends that the instruction is confusing or misleading, the Court does not agree. The government fails to explain how the instruction is confusing or misleading simply because "the defendant was never actually seen by any witness inside Room 301." Docket No. 94 (Pl.'s St. at 3). Moreover, the title of the instruction -- as well as its text -- makes clear that the "mere presence" defense applies only to the § 841 crime.

## V.    **VERDICT FORM**

Defendant has not filed any objection to government's proposed verdict form.

IT IS SO ORDERED.

Dated: February 21, 2013

_____
EDWARD M. CHEN
United States District Judge

---

[2] In *Tucker*, the Ninth Circuit underscored that, if other instructions establish that the jury could not find the defendant guilty based on mere presence, then there is no reversible error. *See Tucker*, 641 F.3d at 1123; *see also United States v. Bell*, 418 Fed. Appx. 115, 118 (3d Cir. 2011) (noting that the instructions given by the court "'clearly indicated that the government must prove that [defendant] "knowingly possessed" the firearm in order to find him guilty,'" and "[t]hus, 'the jury necessarily found beyond a reasonable doubt that' [defendant] knowingly possessed the firearm and ammunition and that he was not a mere spectator").