UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

ANTHONY McGEE,

    Defendant.
_____/

No. CR-12-0052 EMC

**ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL**

**(Docket No. 121)**

    Previously, a jury found Defendant Anthony McGee guilty of (1) being a felon in possession of a firearm that previously traveled in interstate or foreign commerce (18 U.S.C. § 922(g)); (2) possessing methamphetamine, in an amount weighing at least 5 grams, with intent to distribute (21 U.S.C. § 841); and (3) carrying a firearm during and in relation to a drug trafficking offense or possessing a firearm in furtherance of a drug trafficking offense (18 U.S.C. § 924(c)). *See* Docket No. 118 (jury verdict).

    Currently pending before the Court is Mr. McGee's motion for judgment of acquittal or a new trial. Having considered the parties' briefs, their oral argument, and all other evidence of record, the Court hereby **DENIES** the motion for relief.

### I. DISCUSSION

A.   Legal Standard

    Under Federal Rule of Criminal Procedure 29, a defendant may file a motion for a judgment of acquittal after a jury verdict. A Rule 29 motion is basically a challenge to the sufficiency of evidence. "In ruling on a Rule 29 motion, 'the relevant question is whether, after viewing the

1

evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Alarcon-Simi*, 300 F.3d 1172, 1176 (9th Cir. 2002) (emphasis in original). "[I]t is not the district court's function to determine witness credibility when ruling on a Rule 29 motion." *Id.*

Under Federal Rule of Criminal Procedure 33, a "court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The Ninth Circuit has indicated that a motion for a new trial should be granted if an error, "in any reasonable likelihood, [could] have affected the judgment of the jury." *United States v. Butler*, 567 F.2d 885, 891 (9th Cir. 1978). The Ninth Circuit has also noted that a motion for a new trial may be granted where there is a sufficiency-of-the evidence problem. As suggested by the language of the rule, where sufficiency of the evidence is at issue,

> [a] district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal. "The district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." "If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that *a serious miscarriage of justice may have occurred*, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury."

*United States v. Alston*, 974 F.2d 1206, 1211-12 (9th Cir. 1992) (emphasis added). In short, a motion for a new trial should be granted "only in an exceptional case in which the evidence weighs heavily against the verdict." *United States v. Merriweather*, 777 F.2d 503, 507 (9th Cir. 1985); *see also United States v. Camacho*, 555 F.3d 695, 706 (8th Cir. 2009) (stating that "a new trial motion based on insufficiency of the evidence is to be granted only if the weight of the evidence is heavy enough in favor of acquittal that a guilty verdict may have been a miscarriage of justice[;] [n]ew trial motions based on the weight of the evidence are generally disfavored"); *United States v. Martinez*, 763 F.2d 1297, 1312-13 (11th Cir. 1985) (stating that "[t]he court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be *more reasonable*[;] [t]he evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand") (emphasis added). *See, e.g.*, *United States v. Acosta*, No. C 11-00182 CRB,

2012 U.S. Dist. LEXIS 10383, at *28 (N.D. Cal. Jan. 30, 2012) (granting Rule 33 motion where court found it "absolutely implausible" that the defendant's false statement was *material* to ICE).

B.  Defendant's Arguments

Mr. McGee's arguments in favor of a judgment of acquittal or a new trial rest in large part on there being an unfair trial based either on individual or cumulative error. The multiple errors identified by Mr. McGee are as follows:

(1)  Testimony by the police officer about what he was told by the alleged confidential informants was unfairly prejudicial, *see* Fed. R. Evid. 403, particularly given the specifics of the testimony (*i.e.*, the officer did not testify that he had been told that a man matching Mr. McGee's description was carrying a gun and staying at the hotel room but rather testified that the confidential informants identified the exact gun, the exact room number, and the exact drugs at issue).

(2)  The Court refused to disclose the identities of the alleged confidential informants, even though (a) Mr. McGee needed the identities either to show that the informants did not actually exist or that he informants did not inform the police of the same information that the officer recited to the jury and even though (b) the informants were basically percipient witnesses to the crimes charged.

(3)  The evidence was insufficient to support the verdicts.

(4)  The lack of an arraignment on the superseding indictment or on the information alleging a prior drug conviction violated Mr. McGee's right to due process.

(5)  Mr. McGee's parole status was introduced as evidence, which was unfairly prejudicial.

(6)  The Court improperly excluded evidence of the photographs of Mr. McGee's injuries.

C.  Testimony Regarding Confidential Informants

As noted above, Mr. McGee argues first that the testimony about the informants' statements should have been excluded under Rule 403. *See* Mot. at 3. In response, the government argues that Mr. McGee opened the door to this testimony because he first raised before the jury the theory that the officers had used excessive force – *i.e.*, that the officers needed to cover up their brutality by planting a gun on Mr. McGee (to justify their use of force) and then lying about the confidential

3

informants' tip.  The government further argues that the jury was entitled to hear the details about the informants' statements given that (1) Mr. McGee never raised this specific objection at trial, (2) the specifics were relevant to the officers' state of mind, and (3) Mr. McGee had questioned whether it was reasonable for the officers to believe the informants – *i.e.*, "[t]he level of detail provided by an informant has long been used by Courts to determined the perceived reliability of a tip."  Opp'n at 5.

The Court agrees with the government's position.  As the government argues, it was Mr. McGee who opened the door to the testimony.  *See, e.g.*, *United States v. Dorsey*, 677 F.3d 944, 954 (9th Cir. 2012) (noting that, because "[d]efense counsel implied in his opening statement that Fomby was a liar and that he was biased because he got 'a deal from the government,'" it was permissible for the government to "respond[] to this attack by eliciting testimony that Fomby's plea agreement required him to tell the truth," which it otherwise could not have done; adding that, "[w]hen the defense opens a door, it should not be surprised to see the prosecutor enter").

To the extent Mr. McGee objects to the testimony about the confidential informants because the testimony provided damning specifics (*e.g.*, the exact gun, the exact room, the exact drugs) which, according to Mr. McGee, were unnecessary, he does not appear to have raised this specific objection before the Court at trial.  *See* Fed. R. Evid. 103(a) (providing that "[a] party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and: (1) if the ruling admits evidence, a party, on the record: (A) timely objects or moves to strike; and (B) states the specific ground, unless it was apparent from the context").  In any event, as the government argues, the specifics were not unfairly prejudicial as they demonstrated that was it was reasonable for the police to find the informants' statements reliable where Mr. McGee had questioned whether it was reasonable for the officers to believe the informants.  *See Illinois v. Gates*, 462 U.S. 213, 234 (1983) (stating that "even if we entertains some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case"); *United States v. Mayer*, 560 F.3d 948, 957 (9th Cir. 2009) (noting that probable cause may be established based on a tip from an informant if there are sufficient indicia of reliability; "[s]uch

indicia include . . . a detailed description of the alleged wrongdoing that the informant witnessed first-hand").

D. <u>Identities of Confidential Informants</u>

The issue regarding the identities of the confidential informants was addressed multiple times during the course of the trial. The Court also issued a formal order on the issue on March 6, 2013. *See* Docket No. 110 (order). Mr. McGee has failed to make any arguments in his papers that persuade the Court that it wrongly decided the issue.

For example, Mr. McGee suggests that a different standard for disclosure applies at the time of trial, as opposed to at the time of a suppression hearing. *See* Mot. at 5. However, he cites no authority that specifically supports that proposition. Also, Mr. McGee argues that the confidential informants were percipient witnesses, but, as the Court noted in its order, this is not a fair characterization; rather, the confidential informants in the instant case were at best "tipsters." *See* Docket No. 110 (Order at 3 n.2). Finally, as the Court underscored in its March 6 order, before there can be disclosure, there must be "more than a 'mere suspicion' that the informant has information which will prove 'relevant and helpful' to [the defendant's] defense, or that will be essential to a fair trial." *United States v. Henderson*, 241 F.3d 638, 645 (9th Cir. 2000). Mr. McGee has offered nothing other than a mere suspicion.

To the extent Mr. McGee argues there is a possibility that the informants never existed in the first place, again, he has offered nothing other than a mere suspicion. The Court held an *ex parte* evidentiary hearing on this issue and examined the officers about the informants. The Court found the officers' testimonies credible and that Mr. McGee's suggestion that the informants were made up was speculative. The Court reviewed contemporaneous notes taken by an officer who interviewed the informants, and ordered the notes (with one redaction) produced to Mr. McGee at trial.

E. <u>Sufficiency of Evidence</u>

Mr. McGee makes two arguments based on sufficiency of the evidence.

- First, he contends that, for the crime of possession of a firearm by a felon, there was insufficient evidence to support the jury's verdict because there was only evidence that Norinco handguns must travel in interstate commerce; there was never evidence that a *KSI*

handgun in particular (one of the models manufactured by Norinco) must travel in interstate commerce. (The jury instructions refer to possession of a KSI 9mm handgun.)

- Second, he asserts that, for the crime of possession of 5 grams or more of methamphetamine, there was insufficient evidence to show that he had dominion or control over the drugs, as opposed to mere knowledge of the contraband. According to Mr. McGee, he could be deemed to have dominion or control only if the jury were to credit the confidential informants' statements, which should not have been admitted.

Neither argument is persuasive.

As to the first argument, if all Norinco handguns must travel in interstate commerce, then as a default, a KSI – one of the models manufactured by Norinco – must, too. To the extent Mr. McGee presented a new argument at the hearing that the charging papers failed to establish an interstate commerce element, the Court does not agree. The criminal complaint included an affidavit from a San Francisco Police Department inspector, who stated that the KSI pistol was not manufactured in California and therefore the firearm had to have traveled in interstate commerce to arrive in California. *See* Docket No. 1 (Siebert Aff. ¶ 20). Thereafter, both the indictment and the superseding indictment referred to the interstate commerce requirement. *See* Docket Nos. 5, 45 (indictment and superseding indictment).

As to the second argument, the DNA evidence connected Mr. McGee to the large bag of methamphetamine in the room. Although there was evidence of DNA from other individuals on the bag, Mr. McGee's DNA predominated. Moreover, more than one person can have possession. *See* 9th Cir. Model Crim. Jury Instruction No. 3.17 (defining "possession"; noting that "[m]ore than one person can be in possession of something if each knows of its presence and has the power and intention to control it").

Furthermore, the government appropriately notes that there was more to connect Mr. McGee to the drugs in the hotel room than his DNA: "His 'calling card,' a large supply of the distinctive little baggies with spade markings containing the drugs on his person[,] [was] found in Room 301"; in addition, "the evidence showed that he had checked out of another room the Auburn Hotel the

night before he registered as a guest of Room 301, meaning that Room 301 was his sole residence that night, even if shared." Opp'n at 8. The evidence at trial substantiated these facts.

The Court acknowledges that it is not implausible that a different jury, presented with the same facts, could have declined to make a finding that Mr. McGee had possession or control over the drugs in the hotel room. Nevertheless, that fact is not enough to warrant a new trial. As noted above, to warrant a new trial, the Court must find that "the evidence weighs heavily against the verdict," *Merriweather*, 777 F.2d at 507, such that "a serious miscarriage of justice may have occurred." *Alston*, 974 F.2d at 1211. That standard has not been met here.

F.   <u>Arraignment</u>

In the original indictment, filed on January 26, 2012, Mr. McGee was charged with only a violation of 18 U.S.C. § 922(g) (*i.e.*, felon in possession of a firearm). *See* Docket No. 5 (indictment). Mr. McGee was arraigned based on that original indictment on January 27, 2012. *See* Docket No. 6 (criminal minutes).

In October 2012, a superseding indictment was filed. This indictment contains all three crimes on which the jury ultimately rendered a verdict. *See* Docket No. 45 (superseding indictment). In December 2012, the government filed an information for increased punishment by reason of the prior felony drug conviction. *See* Docket No. 54 (information). Mr. McGee was never arraigned a second time after either of these events.

The government argues that the lack of a second arraignment was not a violation of Mr. McGee's right to due process because "[a]rraignment is not a procedure required by the due process clause of the fifth amendment." *Valenzuela-Gonzalez v. United States Dist. Ct.*, 915 F.2d 1276, 1280 (9th Cir. 1990). In *Garland v. Washington*, 232 U.S. 642 (1914), the Supreme Court noted that due process does not require any particular procedure "so long as it appears that the accused has had sufficient notice of the accusation and an adequate opportunity to defend himself in the prosecution," and "[t]ried by this test it cannot for a moment be maintained that the want of formal arraignment deprived the accused of any substantial right or in any wise changed the course of trial to his disadvantage." *Id.* at 645; *see also United States v. Coffman*, 567 F.2d 960, 961 (10th Cir. 1977) (noting defendant's acknowledgment that he was given a copy of the indictment before trial

1  and defendant's failure to claim that he was not fully prepared for trial; stating that, "under these
2  circumstances, no prejudice having been demonstrated, arraignment is not necessary"). In his
3  motion, Mr. McGee admits as much, *see* Mot. at 9-10 (citing *Garland*), but argues that the Court
4  should consider the lack of an arraignment "in combination with the other procedural errors in this
5  case." Mot. at 10.

6  The problem for Mr. McGee is that he has presented no evidence that he was prejudiced by
7  the failure to arraign him on the superseding indictment. There is nothing in the record to suggest
8  that he was not aware of all three crimes for which he was tried. To the extent Mr. McGee cited
9  additional authority at the hearing to support his position, that authority is unavailing. For example,
10 neither *United States v. Reiter*, 897 F.2d 639 (2d Cir. 1990), or *United States v. Christopher*, 700
11 F.2d 1253 (9th Cir. 1983), is on point because each case dealt with the issue of a defendant being
12 *tried* in absentia, which is not the situation herein.

13 G.    Parole Status

14 Mr. McGee argues that his parole status was erroneously introduced as evidence, contrary to
15 the Court's pretrial ruling, and that this was unfairly prejudicial to him. The Court does not agree
16 that this evidence warrants reversal or a new trial. As the government notes, the officer never
17 testified that Mr. McGee was a parolee; rather, the officer referred to a parole search of the hotel
18 room, for which Mr. McGee was only a registered guest. Even if the jury might have thought that
19 the search of the hotel room took place because Mr. McGee was the parolee (and not Terence
20 Ferguson, the registered occupant of the hotel room), the Court instructed the jury that there was no
21 evidence that Mr. McGee was on parole. Furthermore, as the government notes, the facts remains
22 that Mr. McGee stipulated that he was a felon, which further diminishes any possible prejudice."
23 Opp'n at 10. Furthermore, nothing suggests the government deliberately elicited testimony about
24 Mr. McGee's parole status.

25 H.    Photographs

26 Finally, the Court rejects Mr. McGee's contention that it improperly excluded evidence of
27 the photographs of his injuries. As the government argues, the testimony of the officers made clear
28 that there was a violent struggle with Mr. McGee and that he was punched and kicked repeatedly.

Thus, Mr. McGee's theory that the officers planted the gun to justify the amount of force used was hardly undercut simply because the photographs were not admitted. To the extent Mr. McGee argues that the photographs could have been used to challenge the credibility of some of the officers – *i.e.*, those officers who testified that they could not remember whether he was bleeding after the incident – the probative value of the photographs was minimal. Finally, to the extent Mr. McGee contends that the photographs supported his theory that his DNA was transferred to the gun as a result of his bleeding, the Court notes that there was never any testimony that Mr. McGee was not bleeding as a result of the incident. There is no dispute that Mr. McGee was bloodied after being punched and kicked. Officer Rivera so testified. Mr. McGee had ample opportunity to explore his theory of transfer of DNA to the gun sufficiently at trial. He made that argument in closing. Furthermore, there was uncontradicted testimony that the gun fell from Mr. McGee's pants during his arrest, providing independent evidence of his possession.

## II. CONCLUSION

For the foregoing reasons, the Court concludes that Mr. McGee has failed to establish that he is entitled to any relief, either under Rule 29 or Rule 33.

This order disposes of Docket No. 121.

IT IS SO ORDERED.

Dated: June 12, 2013

EDWARD M. CHEN
United States District Judge